Charles C. Gokey, CA Bar No. 295610
cgokey@engstromlee.com
ENGSTROM LEE LLC
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
T. (612) 305-8349; F. (612) 677-3050
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Minhajul Azad, as the representative of a class of similarly situated persons, and on behalf of the CSC Employee Stock Ownership Plan,

Plaintiff,

v.

Event Services America, Inc., Aegis Trust Company, LLC, and Robert Lesser,

Defendants.

Case No. 2:25-cv-8455

**CLASS ACTION COMPLAINT**

(1) Violations of Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*

## NATURE OF THE CASE

1. Minhajul Azad ("Plaintiff"), on behalf of the CSC Employee Stock Ownership Plan (the "Plan"), alleges violations of the Employee Retirement Income Security Act ("ERISA") by Event Services America, Inc. ("ESA"), Aegis Trust Company, LLC ("Aegis"), and Robert Lesser ("Lesser" (collectively, "Defendants"). Defendants caused the Plan to overpay for ESA stock and failed to protect the Plan and its participants from the consequences of that overpayment in the subsequent administration of the Plan. As a result of Defendants' violations of ERISA, Plan participants' accounts are worth less.

## JURISDICTION AND VENUE

2. Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a), which provides that participants in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. §1109, and equitable and other relief pursuant to 29 U.S.C. § 1132(a)(3).

3. This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

4. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because ESA administers the Plan in this district at its headquarters in Northridge, California.

## PARTIES

5. The Plan is an "employee stock ownership plan" governed by ERISA. The Plan was established by ESA in 2019 for the ostensible purpose of providing retirement benefits to ESA employees via ownership of company stock. Each Plan participant has an individual account in the Plan, and the benefit that a participant receives is the value of their individual account at the time that it is distributed from

the Plan. According to the Plan's most recently filed annual report (as of year-end 2023), that Plan has around 3,000 participants with account balances.

6. ESA (also referred to herein as the "company") is a privately-owned corporation organized under the laws of the state of Florida. ESA is the sponsor of the Plan. Since its inception, ESA has been the named fiduciary of the Plan responsible for the administration of the Plan. In its role as the administrator of the Plan, ESA has broad discretion and control concerning the management and administration of the Plan, including the authority to appoint and replace trustees and other persons to act in the interest of Plan participants. ESA is and has at all times been a "fiduciary" of the Plan as defined by 29 U.S.C. § 1002(21)(A)(i) and (iii).

7. Aegis is a limited liability company organized under the laws of the State of New Hampshire and is the successor by merger of Aegis Fiduciary Services, LLC, a limited liability company formed in 2017 under the laws of the State of New York. Aegis is the trustee of the Plan. In its role as trustee, Aegis controls the assets of the Plan. Aegis receives income owed to the Plan, pays Plan liabilities, and oversees the allocation of shares to individual participants' accounts in the Plan. In this capacity, Aegis is a "fiduciary" of the Plan as defined by 29 U.S.C. § 1002(21)(A)(i). On information and belief, Aegis also acted as a discretionary trustee of the Plan for purposes of the Plan's acquisition of ESA stock and the Plan's approval of financing and other arrangements incident to the Plan's purchase of ESA stock. In this capacity, Aegis acted as a "fiduciary" of the Plan as defined by 29 U.S.C. § 1002(21)(A)(i) and (iii).

8. Lesser is the principal owner and officer of Aegis. He performed the trustee roles designated for Aegis during the relevant time and thereby acted as a "fiduciary" of the Plan as defined by 29 U.S.C. § 1002(21)(A)(i) and (iii).

9. Plaintiff worked for ESA between 2019 and 2023. He has a vested account balance in the Plan, which has not been distributed from the Plan as of the

date below. The number of shares in Plaintiff's individual account and the total value of Plaintiff's individual account would be higher if Defendants had not violated ERISA as described herein.

## LEGAL AND FACTUAL BACKGROUND

### *ESOPs and Exempt Loans*

10. The Plan acquired and holds shares of ESA stock subject to a loan from ESA. This type of loan is referred to as an "exempt loan." 29 C.F.R. § 2550.403b–3(a)(3). Exempt loans are a common financing tool used by companies that sponsor employee stock ownership plans (ESOPs).

11. The financing tool used by the Plan is referred to as an "exempt loan" because ERISA prohibits employers from making loans to their employee benefit plans. 29 U.S.C. § 1106(a)(1)(B). In order to promote employee ownership, Congress created an exemption for loans between employers and ESOPs sponsored for the benefit of their employees, so long as the loan meets certain requirements. *See* 29 U.S.C. § 1108(b)(3).

12. In allowing the ESOP loan exemption, Congress understood that "the employer then will guarantee the debt obligation of the plan and will agree to make annual contributions to the plan sufficient to meet the plan's obligation of paying interest and principal on its debt." Senate Report 94–36, 59 (Mar. 17, 1975).

13. The employer's obligation to make contributions to an ESOP to repay an exempt loan is fundamental to the legal status of the ESOP. *See* 26 U.S.C. § 401(a)(1); *see also Benefits Comm. of Saint-Gobain Corp. v. Key Tr. Co. of Ohio*, 313 F.3d 919, 925 (6th Cir. 2002) ("If a leveraged ESOP is created, the employer is obligated to make cash contributions to the ESOP[.]"). Contributions to repay the exempt loan must be "substantial and recurring." 29 C.F.R. § 2550.408b–3(h)(3); 26 C.F.R. § 54.4975-7(b)(8)(3).

14. The employer's contributions to repay an exempt loan are vital because repayment of the exempt loan is how employees benefit from the ESOP. Shares of stock acquired using an exempt loan are not allocated to individual participant accounts until repayments on the exempt loan are made. 29 C.F.R. § 2550.408b–3(h)(1); *see also Benefits Comm. of Saint-Gobain Corp.*, 313 F.3d at 931. The contributions, loan payments, and resulting share allocations to employees' individual accounts are part of their compensation employees receive as consideration for working at ESA.

15. The number of shares allocated to participant accounts as a result of each payment on an exempt loan is based on the amount of the payment relative to all payments due on the exempt loan. Accordingly, arrangements that defer or reduce payments are disfavored and may fail to satisfy exemption requirements because the arrangement lacks a primary purpose to benefit employees. 29 C.F.R. § 2550.408b–3(h)(3); 26 C.F.R. § 54.4975-7(b)(8)(3).

16. Exempt loans warrant "special scrutiny" and must be "truly arranged primarily in the interest of participants and their beneficiaries rather than, for example, in the interest of certain selling shareholders." 29 C.F.R. § 2550.408b-3(b)(2).

17. Once shares of stock acquired with an exempt loan are allocated to individual participant accounts, the shares are no longer collateral for the exempt loan, and the company has no recourse against those shares. *See* 29 C.F.R. § 2550.408b–3(e); *see also* 26 U.S.C. § 409(c).

### *Exempt Loans and Preferred Stock*

18. Corporations may issue multiple classes of stock with distinct rights and obligations.

19. "Preferred stock" is a class of stock that typically bestows upon the holder the right to receive specified dividend income from the company that issued

the stock. The guaranteed dividends to preferred stockholders have priority over the claims of other stockholders, *i.e.*, "common" stockholders.

20. "Convertible preferred stock" is preferred stock that may be converted to common stock pursuant to terms defined between the company and the buyer of the convertible preferred stock.

21. The fixed income provided by preferred stock dividends, combined with the flexibility to convert it to common stock if common shares would produce meaningful gains, generally allows private companies to price convertible preferred stock at a premium relative to common stock.

22. Issuing and managing convertible preferred stock in the context of a leveraged ESOP funded by an exempt loan creates risk of unfair treatment of ESOP participants, if the ESOP paid a premium price for the convertible preferred stock.

23. While dividends earned on company stock acquired by an ESOP with the proceeds of an exempt loan generally may be used to repay the corresponding exempt loan, using convertible preferred stock dividends for which the ESOP paid a premium price to reduce the employer contributions that the ESOP would be entitled to regardless of whether the shares were convertible preferred shares or common shares negates the extra value associated with preferred stock for which the ESOP paid the premium price. In order for the ESOP and its participants to receive the economic benefit of the premium price paid for convertible preferred stock, the ESOP must receive *both* the employer contributions necessary to repay the exempt loan *and* the preferred dividends. Otherwise, the ESOP overpaid for the stock by paying a higher price for income to which it was already entitled, and the stock acquisition transaction was therefore prohibited. *See* 29 U.S.C. § 1106(a)(1)(A); 29 U.S.C. § 1108(e)(1); *see also Randall on behalf of Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*, 2024 WL 713997, at *6 (D. Minn. Feb. 21, 2024).

24. Additionally, if the preferred dividends that generated the premium price for convertible preferred shares are intended to be used to offset the employer contributions to which the ESOP is otherwise entitled, an exempt loan made in the amount of the premium price is not made primarily for the benefit of employees. In such a case, the premium amount of the exempt loan is made to benefit the seller by awarding a premium price without a corresponding economic benefit to employees, and the loan is prohibited. *See* 29 C.F.R. § 2550.408b-3(b)(2). The making of the loan is also disloyal and imprudent, and such offsetting of employer contributions, if carried out, constitutes the misuse of Plan assets for the benefit of the company and seller. *See* 29 U.S.C. § 1104(a)(1); *Arnold v. Paredes*, 714 F. Supp. 3d 962, 984 (M.D. Tenn. 2024); *Randall*, 2024 WL 713997, at *7.

***The Plan Formation Transaction***

25. The Plan formation transaction closed on or after September 6, 2019. Prior to the transaction, ESA restated its articles of organization to authorize the issuance of a convertible preferred class of stock specifically for acquisition by the Plan.

26. For purposes of the sale the Plan, the new class of convertible preferred stock was priced at $114 million for 860,000 shares, a markup of more than $20 million relative to the value of equivalent equity in the company immediately prior to the sale. The conceit behind the price markup was that the preferred dividends to be paid to Plan were worth the extra price. The deal further contemplated that the Plan would borrow the entire purchase price from the company and pay the loan back over 30 years.

27. The extra value of the convertible preferred shares sold to the Plan was illusory. The deal contemplated that the preferred dividends would offset the company's obligation to fund the ESOP loan repayments. This meant that that new ESOP would receive no greater income from the company than if the ESOP had

bought common shares, and the company would have no greater obligation to provide income to the ESOP than if the ESOP had bought common shares. Canceling out the other income the ESOP would be entitled to receive in the deal rendered the convertible preferred stock equal in value to common stock. Accordingly, the Plan overpaid by more than $20 million.

28. The purpose of overpricing the stock was to allow shareholders immediately prior to the sale to the Plan to receive the overpayment. While the identities of such prior shareholders are not known to Plaintiff at this stage, Plaintiff alleges on information and belief that such shareholders included parties in interest to the Plan pursuant to 29 U.S.C § 1002(14)(A)–(I), including but not limited to directors and officers of ESA and a person owning more than 50% of ESA's stock prior to the transaction.

***Subsequent Administration of the Plan***

29. Defendants have negligently administered the Plan since the Plan formation transaction. ESA failed to file an annual report for the Plan until 2024. ESA then belatedly filed annual reports covering the first four years of the Plan at the same time in April 2024.

30. ESA's failure to file timely annual reports, as required by 29 U.S.C. § 1024(a), concealed information related to the Plan formation transaction and the subsequent administration of the Plan, including the fact that the transaction was designed to allow ESA to use the preferred dividends to reduce its contribution obligation.

31. The annual reports that ESA caused to be belatedly prepared and filed are also not accurate and reliable with respect to the amount, timing, and classification of Plan income. For example, one report attributes Plan income to common stock, but the Plan holds no common stock. Plaintiff does not credit the annual reports and will hold Defendants to a strict accounting of Plan income, loan

payments, and share allocations since the inception of the Plan.

32. In any case, subsequent to the Plan formation transaction, Defendants have allowed the Plan to be administered in a manner that misuses the Plan's preferred dividends and gives effect to the false premise that the Plan purchased shares worth in excess of $20 million more than common shares.

33. Total share allocations to Plan participants through year-end 2023 were 102,069, which is no more (and appears to be even less) than the number of shares that would be allocated to participants as a result of ESA contributing the minimum amount of income to the Plan necessary to regularly service the Plan's loan each year.[1] Further, the Plan holds no cash or other investments. This means that ESA has used the Plan's preferred dividends to offset contributions owed to the Plan each year, rather than causing the plan to receive both the minimum contributions due to the service the loan and the preferred dividends for which the Plan paid an extra price in excess of $20 million.

34. Aegis and Lesser have knowingly participated in ESA's misuse of the Plan's dividends by receiving Plan income and paying it back to ESA each year without asserting that the Plan is entitled to receive the preferred dividends with no offset to contributions.

35. Defendants' misuse of the Plan's preferred dividends has caused participants to lose share allocations or cash income that they otherwise would have received. Had the Plan received the preferred dividends without offset between 2019 and 2023, Aegis and Lesser would have been obligated to either (1) allocate the preferred dividends in cash to participants, on top of the shares allocations

[1] Given 860,000 shares purchased with the proceeds of the Plan loan, level payments on the loan over the 30-year term would allocate 1/30th of the total pool of shares each year to participants, or 28,667 shares per year. Through year-end 2023, this would be at least 114,668 shares for four years of regular payments (assuming no payment was scheduled for the first year of the Plan in 2019).

received, or (2) use the preferred dividends to make an additional payment on the Plan's loan, which would result in approximately twice as many ESA shares being allocated to participants' accounts. Plaintiff was hurt by Defendants' misconduct alongside his fellow participants, and his account is worth approximately half of what it should be worth.

## PLAN-WIDE RELIEF

36. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks recovery on behalf of the Plan pursuant to this statutory provision.

37. Plaintiff seeks recovery for injuries to the Plan sustained as a result of fiduciary violations of ERISA and seeks equitable relief on behalf of the Plan as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

38. Plaintiff is adequate to bring this derivative action on behalf of the Plan, and his interests are aligned with other participants and beneficiaries. Plaintiff does not have any conflicts of interest with any participants or beneficiaries that would impair or impede his ability to pursue this action. Plaintiff has retained counsel experienced in ERISA litigation and intends to pursue this action vigorously on behalf of the Plan.

## CLASS ACTION ALLEGATIONS

39. Plaintiff additionally and alternatively seeks certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

40. Plaintiff asserts his claims on behalf of a class of participants and beneficiaries of the Plan defined as follows:

> All Plan participants since the inception of the Plan, excluding employees who left the company before vesting in any part, and excluding any persons with fiduciary responsibilities to the Plan.

41. Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The Plan has more than 3,000 participants with account balances.

42. Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff is a Plan participant, and all Plan participants suffered injuries, as Plaintiff did, resulting from the Plan's overpayment for ESA stock and the unlawful use of Plan assets to offset employer contributions owed to the Plan.

43. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that he seeks to represent, and he has retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede his ability to represent such Class members.

44. Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a. Whether each Defendant was a fiduciary of the Plan, and the scope of their duties;

b. Whether Defendants failed to comply with the ERISA fiduciary standards of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1);

c. Whether the exempt loan and use of preferred dividends to pay employer contributions violated 29 U.S.C. § 1106;

d. Whether the Plan received adequate consideration for the price that it paid for ESA stock;

e. The proper form of equitable and injunctive relief; and

f. The proper measure of monetary relief.

45. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A)

because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

46. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court would be dispositive of the interests of all participants.

47. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

48. Plaintiff and his undersigned counsel will provide notice to the Class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## CAUSES OF ACTION

## COUNT I

**Breach of Fiduciary Duty, 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a) Against All Defendants**

49. Plaintiff incorporates the foregoing allegations by reference.

50. ESA acted in a fiduciary capacity with respect to the Plan formation transaction because it had fiduciary appointment power with respect to the trustee and other persons acting on behalf of the Plan in the transaction and orchestrated the transaction by assenting to and implementing the terms that rendered the pricing excessive, namely the price markup in exchange for extra income that ESA knew to be illusory.

51. On information and belief, Lesser and Aegis also acted as fiduciaries on behalf of the Plan in the Plan formation transaction by entering into the transaction on behalf of the Plan and agreeing to pay more for extra income that Lesser and Aegis knew to be illusory.

52. Each Defendant violated the fiduciary standard of care set forth at 29 U.S.C. § 1104(a)(1) by approving the improperly manipulated price paid by the ESOP in its purchase of stock from ESA, and the corresponding loan for the same amount.

53. Each Plan fiduciary named in this count enabled and failed to remedy the violations of ERISA by the other Plan fiduciaries named in this count and is co-liable therewith pursuant to 29 U.S.C. § 1105(a).

54. The Plan suffered a loss as a result of the foregoing by overpaying by more than $20 million for the ESA stock that it acquired. The foregoing Plan loss has negatively affected and will continue to negatively affect the value of participants' accounts in the Plan.

**COUNT II**

**Breaches of Fiduciary Duties in Connection with Misappropriation of Preferred Dividends**

**29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)**

**Against All Defendants**

55. Plaintiff incorporates the foregoing allegations by reference.

56. ESA acts a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii) in connection with the management of Plan dividends because ESA has broad powers as the Plan administrator and can appoint and direct the trustee and other persons to act on behalf of the Plan as necessary to ensure that the interests of Plan participants are adequately protected. When it acts as Plan administrator, ESA knows that the Plan is injured each year by the improper offsetting of Plan contributions but does not take any action to protect the Plan.

57. Aegis and Lesser act as fiduciaries of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii) as the Plan trustees responsible for collecting Plan income and paying Plan liabilities. Aegis and Lesser have the power to block the payment of Plan assets to ESA unless and until ESA provides all income due to the Plan, including the full contribution amount owed and the preferred dividends for which the Plan paid an extra price. Aegis and Lesser also have the ongoing authority, and the duty, to seek rescission and reformation of documents related to the Plan in order to remedy the Plan's overpayment for ESA stock that did not yield the extra income for which the Plan paid an extra price.

58. Defendants violated the fiduciary standard of care set forth at 29 U.S.C. § 1104(a)(1) by allowing the company to misuse the Plan's preferred dividends to offset contributions owed to the Plan.

59. Each Plan fiduciary named in this count enabled and failed to remedy the violations of ERISA by the other Plan fiduciaries named in this count and is co-liable

therewith pursuant to 29 U.S.C. § 1105(a).

60. The Plan suffered a loss as a result of the foregoing equal to the preferred dividends misappropriated. The foregoing Plan loss also has reduced the value of participants' accounts.

**COUNT III**

**Prohibited Transactions in Connection with the Plan Formation Transaction**

**29 U.S.C. § 1106 and 29 U.S.C. § 1105(a)**

**Against All Defendants**

61. Plaintiff incorporates the foregoing allegations by reference.

62. ESA acted in a fiduciary capacity with respect to the Plan formation transaction because it had fiduciary appointment power with respect to the trustee and other persons acting on behalf of the Plan in the transaction and orchestrated the transaction by assenting to and implementing the terms that rendered the pricing excessive, namely the price markup in exchange for extra income that ESA knew to be illusory.

63. On information and belief, Lesser and Aegis also acted as fiduciaries on behalf of the Plan in the Plan formation transaction by entering into the transaction on behalf of the Plan and agreeing to pay more for extra income that Lesser and Aegis knew to be illusory.

64. ESA and sellers of ESA stock who were the intended beneficiaries of the price markup paid by the Plan for ESA stock were parties in interest to the Plan at the time of the Plan formation transaction pursuant to 29 U.S.C. § 1002(14)(A)–(H).

65. Defendants caused the Plan to enter into prohibited transactions in violation of 29 U.S.C. § 1106(a) and 29 U.S.C. § 1106(b)(1) by approving the improperly manipulated price and excessive loan exchanged between the Plan and ESA and the sellers.

66. Each Plan fiduciary named in this count enabled and failed to remedy the

violations of ERISA by the other Plan fiduciaries named in this count and is co-liable therewith pursuant to 29 U.S.C. § 1105(a).

67. The Plan suffered a loss as a result of the foregoing by overpaying by more than $20 million for the ESA stock that it acquired. The foregoing Plan loss has negatively affected and will continue to negatively affect the value of participants' accounts in the Plan.

**COUNT IV**

**Prohibited Transactions in Connection with Misappropriation of Preferred Dividends**

**29 U.S.C. § 1106 and 29 U.S.C. § 1105(a)**

**Against All Defendants**

68. Plaintiff incorporates the foregoing allegations by reference.

69. ESA acts a fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii) in connection with the management of Plan dividends because ESA has broad powers as the Plan administrator and can appoint and direct the trustee and other persons to act on behalf of the Plan as necessary to ensure that the interests of Plan participants are adequately protected. When it acts as Plan administrator, ESA knows that the Plan is injured each year by the improper offsetting of Plan contributions but does not take any action to protect the Plan.

70. Aegis and Lesser act as fiduciaries of the Plan pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii) as the Plan trustees responsible for collecting Plan income and paying Plan liabilities. Aegis and Lesser have the power to block the payment of Plan assets to ESA unless and until ESA provides all income due to the Plan, including the full contribution amount owed and the preferred dividends for which the Plan paid an extra price. Aegis and Lesser also have the ongoing authority, and the duty, to seek rescission and reformation of documents related to the Plan in order to remedy the

Plan's overpayment for ESA stock that did not yield the extra income for which the Plan paid an extra price.

71. ESA was a party in interest to the Plan at all times pursuant to 29 U.S.C. § 1002(14)(C).

72. Defendants caused the Plan through their action or inaction to enter into prohibited transactions in violation of 29 U.S.C. § 1106(a) and 29 U.S.C. § 1106(b)(1) by allowing ESA to use the Plan's preferred dividends to offset contributions owed to the Plan.

73. Each Plan fiduciary named in this count enabled and failed to remedy the violations of ERISA by the other Plan fiduciaries named in this count and is co-liable therewith pursuant to 29 U.S.C. § 1105(a).

74. The Plan suffered a loss as a result of the foregoing equal to the preferred dividends misappropriated. The foregoing Plan loss also has reduced the value of participants' accounts.

**PRAYER FOR RELIEF**

75. Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A. Certify Plaintiff's authority to seek plan-wide relief on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2);

B. Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiff as class representative, and certify his counsel as class counsel;

C. Order Defendants to make good to the Plan all losses resulting from their violations of ERISA, and to disgorge their profits;

D. Order an accounting of the Plan;

E. Order rescission and reformation of documents related to the Plan to cure the defect of allowing convertible preferred dividends to

be used to offset Plan contributions needed to service the Plan's loan, notwithstanding the extra price that the Plan paid for those convertible preferred dividends;

F. Impose equitable and injunctive relief sufficient to protect Plan participants in the future and ensure proper allocation of cash proceeds and other relief obtained in this action to Plan participants;

G. Award Plaintiff reasonable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

H. Award prejudgment and post-judgment interest; and

I. Award such other and further relief as the Court deems just and equitable.

Dated: September 5, 2025

**ENGSTROM LEE LLC**

/s/ *Charlie C. Gokey*
Charles C. Gokey, CA Bar No. 295610
cgokey@engstromlee.com
ENGSTROM LEE LLC
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050

*Counsel for Plaintiff*